

**09-CV-00662-AF**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VICTOR KOTOK, and NADEZHDA KOTOK<br><br>Plaintiffs,<br><br>v.<br><br>HOMECOMINGS FINANCIAL, LLC, et al.,<br><br>Defendants. | CASE NO. C09-662 RSM<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' "Motion and Memorandum for Temporary Restraining Order and Preliminary Injunction to Restrain Trustee's Sale." (Dkt. #15). Plaintiffs argue that the Court should enter an order restraining a trustee's sale from occurring on Friday, June 12, 2009. Plaintiffs indicate they will suffer irreparably injury without injunctive relief, and that public policy supports Plaintiffs' request. Defendants respond that Plaintiffs fall well short of meeting their burden in justifying injunctive relief.

For the reasons set forth below, the Court agrees with Defendants, and DENIES Plaintiffs' motion in its entirety.

## II. DISCUSSION

**A. Background**

The instant lawsuit arises out of a purchase of real property in Federal Way, Washington by Plaintiffs Victor and Nadezhda Kotok. Plaintiffs, who are of Ukranian

ORDER
PAGE - 1

descent, allege that when they purchased their first home in the fall of 2005, a loan officer at Defendant CTX Mortgage Company LLC ("CTX Mortgage") made several misrepresentations about the terms of their loan.

Plaintiffs specifically contend that the loan officer indicated that: (1) Plaintiffs had a home loan with an interest rate of 1.627% when in fact the interest rate on the loan was 7.75%; and (2) Plaintiffs' loan would have a fixed rate for five years with an adjustable rate thereafter, when in fact the loan was a three-year ARM which provided only a three-year period with the fixed interest rate. Plaintiffs further allege that CTX Mortgage failed to provide them with key documents relating to the loan.

Furthermore, Plaintiffs claim that they were made aware of these misrepresentations in the fall of 2008. They allege that they were notified by CTX Mortgage that the fixed-rate period on their loan had ended. They claim that this resulted in a higher adjusted interest rate. Therefore they allege they could not meet their mortgage payments. It appears that Plaintiffs stopped making payments sometime in the fall of 2008.

Due to Plaintiffs' failure to make their payments, Defendant Chicago Title Insurance Company of Washington ("Chicago Title") sent Plaintiffs a notice of Foreclosure and Notice of Trustee's Sale in February of 2009. Chicago Title is the trustee under the Deed of Trust on the property at issue. The trustee's sale is scheduled for June 12, 2009.

As a result of the impending trustee's sale, and based on the alleged misrepresentations described above, Plaintiffs brought the instant lawsuit on April 30, 2009 in King County Superior Court. Plaintiffs name CTX Mortgage, Chicago Title, and Homecoming Financial LLC ("Homecoming"), the bank that financed the loan, as Defendants. Plaintiffs claim that Defendants violated the provisions of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et. seq.*, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, and the Washington Consumer Protection Act ("CPA"). (Dkt. #12, Pls.' Am. Compl., ¶¶ 30-41).

Defendants subsequently removed the case to this Court on May 13, 2009. Defendants brought a motion to dismiss shortly thereafter. (Dkt. #7). Plaintiffs brought the instant motion for temporary restraining order on June 1, 2009. The Court entertained oral argument

ORDER
PAGE - 2

on June 11, 2009, and following the argument, the Court denied Plaintiffs' motion. The Court informed the parties that it would issue an Order explaining the Court's reasoning in further detail. The Court's reasons are set forth below.

**B. FRCP 65**

As an initial matter, the Court notes temporary restraining orders ("TROs") are generally issued by a court without notice to the opposing party. Here, Plaintiffs noted their motion for a TRO nine days after they filed their motion. Defendant Homecoming clearly responded before the noting date, and the Court entertained oral argument on Plaintiffs' motion. Thus, all parties have had notice of Plaintiffs' requested relief. And while a party can certainly seek a TRO with notice, Plaintiffs' requested declaratory relief effectively seeks to permanently enjoin the trustee's sale from occurring. The Court therefore construes Plaintiffs' motion as one for a preliminary injunction.

To obtain a preliminary injunction, the party seeking this equitable remedy must demonstrate either: (1) probable success on the merits and the possibility of irreparable harm; or (2) that serious questions have been raised and the balance of hardships tips in their favor. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Each of "these two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* (internal citation and quotation omitted). In other words, the greater the relative hardship to the party seeking the injunction, the less probability of success must be shown, and vice versa. *See Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). "Because a preliminary injunction is an *extraordinary* remedy, the movant's right to relief must be clear and unequivocal." *Wilderness Workshop v. U.S. Bureau of Land Management*, 531 F.3d 1220, 1224 (10th Cir. 2008) (citation omitted) (emphasis added). Accordingly, the Court examines each factor below.

    1. Irreparable Injury

A party seeking the injunction must "show the possibility of irreparable injury if preliminary relief is not granted." *Earth Island Institute v. U.S. Forest Service*, 442 F.3d

ORDER
PAGE - 3

1147, 1177 (9th Cir. 2006). The showing of irreparable harm is considered "the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (collecting cases). As a result, the alleged injury must be imminent and it must be likely. *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted).

Here, Plaintiffs contend that injunctive relief must issue because if the trustee's sale occurs as scheduled, it will result in the sale of Plaintiffs' primary residence. Plaintiffs contend that "no injury, loss or damage could be more irreparable to plaintiffs than losing their home." (Dkt. #15 at 7). However, conclusory allegations are insufficient to establish even the possibility of irreparable harm. *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1099 (9th Cir. 2007). Merely suggesting what is universally accepted as true – that a loss of a home would be irreparable – is legally unacceptable in the context of a preliminary injunction. Plaintiffs may, for example, have the resources to find temporary housing while pursing their claim. It is certainly reasonable to believe that Plaintiffs have been making plans to find such housing considering that they received notice of the trustee's sale in February of this year. Regardless, Plaintiffs fail to show any evidence to the Court indicating their true financial circumstances, thereby precluding the Court from making a justifiable determination that Plaintiffs will suffer irreparable harm.

In any event, Plaintiffs ignore the well-established principle that irreparable injury cannot be established where harm is measurable in damages. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (recognizing that a plaintiff must demonstrate "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury"). Mere economic injury will not support a request for injunctive relief. *See Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Should Plaintiffs prevail in this case, the monetary damages are clear and certain. Plaintiffs' claims arise out of a single mortgage transaction, and the amounts that have already been paid by Plaintiffs to Defendants are most likely undisputed. Therefore Plaintiffs have failed to show that they will suffer irreparable injury.

ORDER
PAGE - 4

## 2. Success on the Merits

Notwithstanding Plaintiffs' failure to establish irreparable harm, Plaintiffs also cannot demonstrate a probable likelihood of success on the merits. *See Napster*, 239 F.3d at 1013. According to the file Defendant Homecomings possesses, Plaintiffs received a number of loan documents and disclosures near the time the loan closed in October 2005, including: an Adjustable Rate Note; an Adjustable Rate Mortgage, a Deed of Trust; a Federal Truth-in-Lending Disclosure Statement; a First Payment Notice; a Statement of Occupancy; and a HUD Estimated Settlement Statement and HUD-1 Certification. (Dkt. #21, Decl. of Zeitz, ¶ 11, Exs. A-G). Each of these documents contains Plaintiffs' signature or initials. (*Id.*). These facts establish that Plaintiffs clearly had notice regarding the terms of their loan.

Nevertheless, Plaintiffs claim that these documents were dated on November 1, 2005, or one day after the deal closed. Plaintiffs contend that this is a per se violation of TILA because all disclosures must be made to Plaintiffs prior to the consummation of the loan. Plaintiffs cite the entire statutory framework of 15 U.S.C. § 1601, *et seq.*, in support of this statement, and pinpoint only 15 U.S.C. § 1640. (*See* Dkt. #22 at 3). However, not only is TILA comprised of a series of lengthy and complex statutes, there is a whole series of regulations interpreting these statutes. Furthermore, 15 U.S.C. § 1640 entitled "Civil Liability" is much more complex than Plaintiffs represent to the Court. There are several sections and subsections to this statute, and there is no language within this statute that suggests that what Plaintiffs allege occurred in this case is a per se violation of TILA. Indeed, Plaintiffs did not make any specific reference in any of their pleadings, nor did they cite to any specific statutes during oral argument.

The record also tellingly establishes that Plaintiffs' monthly mortgage payments were actually reduced on December 1, 2008. Plaintiffs' mortgage payment prior to this date was $2,219.27 for principal, interest, taxes and insurance, at an interest rate of 7.75%. (Decl. of Zeitz, ¶ 8). Following the reduction, Plaintiffs' payment fell to $1,674.31 for principal, interest, taxes and insurance at an interest rate of 6.25%. (*Id.* at ¶ 9). This significantly undermines Plaintiffs' assertions that a higher interest rate caused them to stop making

ORDER
PAGE - 5

payments. (*See* Dkt. #15 at 5) ("Plaintiffs made most required payments on the Loan since consummation. However, they have not been able to pay the amount each month *under the higher adjusted interest rate.*") (emphasis added).

Plaintiffs contend that this fact has no bearing to the instant motion for preliminary injunction. Plaintiffs simply maintain that Defendants' conduct was a per se violation of TILA and RESPA, and that these statutes are "strict liability" statutes. These arguments are without merit. Even assuming Plaintiffs' naked allegations that Defendants made misrepresentations throughout the closing process, Plaintiffs cannot identify how they were disadvantaged in any way as a result of these misrepresentations. It is undisputable that Plaintiffs' mortgage payments were reduced three years after closing. The Court is hard pressed to see how Plaintiffs will succeed on any of their claims in light of this fact. But for Plaintiffs' failure to pay a *lower* monthly mortgage payment, no trustee sale would have been scheduled by Defendants.

Plaintiffs' inability to offer any objective evidence to the contrary acknowledges that they simply have no foundation to stand upon. In fact, the only piece of evidence submitted by Plaintiffs' counsel during oral argument cuts in Defendants' favor. This document is a Truth-in-Lending Disclosure Statement that is dated ten days *prior* to closing date of the loan. The document further establishes that: (1) the interest rate on the loan was intended to be set at 7.75%; (2) Plaintiffs were to expect their mortgage payments to be set at $1,930.38 before interest, taxes and insurance; and (3) the loan had a variable rate feature.[1] These terms are consistent with the ultimate terms of the loan.

As a result, the Court concludes that Plaintiffs have failed to meet their burden in justifying the issuance of an injunction. The Court additionally finds it unnecessary to address the parties' arguments regarding whether Plaintiffs' claims are time-barred or whether Plaintiffs have a claim under the Washington CPA. The reasons described above are sufficient in denying Plaintiffs' motion. The Court shall discuss these arguments in detail in its subsequent order regarding Defendants' motion to dismiss.

---

[1] This document is attached as Appendix A to this Order.

ORDER
PAGE - 6

## III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Plaintiffs' "Motion and Memorandum for Temporary Restraining Order and Preliminary Injunction to Restrain Trustee's Sale" (Dkt. #15) is DENIED.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 11th day of June, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

Exhibit "A"

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

**LENDER:** CTX MORTGAGE COMPANY
33801 1ST WAY SOUTH SUITE 391
FEDERAL WAY    WA    98003-

**BORROWERS:** VIKTOR KOTOK
NADEZHDA KOTOK

**ADDRESS:** 29517 21ST PLACE SOUTH #2
FEDERAL WAY, WA 98003

**PROPERTY:** 30020 12TH AVENUE SW
FEDERAL WAY, WA 98023
PER TITLE

**APPLICATION DATE:**
[xx] PRELIMINARY    [ ] FINAL

**PREPARED DATE:** 10/21/2005
**LOAN NO.:** 220628842

**Type of Loan:** [ ] V.A. [✓] Conventional [ ] FHA [ ] FmHA

**INTEREST RATE:** 7.750 (e)

| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you on your behalf. | The amount you will have paid after you have made all payments scheduled. |
|---|---|---|---|
| 1.627 % (e) | $63,374.23 (e) | $267,889.28 (e) | $331,263.51 (e) |

**PAYMENT SCHEDULE:**    (e) denotes - ALL NUMERIC DISCLOSURES EXCEPT THE LATE PAYMENT DISCLOSURE ARE ESTIMATES.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 36 | $1,930.38 | 01/01/2006 | | | | | | |
| 1 | $805.21 | 12/01/2035 | | | | | | |

**DEMAND FEATURE:** [✓] This loan does not have a Demand Feature
[ ] This loan has a Demand Feature as follows:

**VARIABLE RATE FEATURE:** [✓] This loan has a Variable Rate Feature.
Variable Rate Disclosures have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 30020 12TH AVENUE SW
FEDERAL WAY, WA 98023

**ASSUMPTION:** Someone buying this property [ ] cannot assume the remaining balance due under original mortgage terms
[✓] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

**FILING/RECORDING FEES:** $ 80.00    (e)

*SEE "IMPORTANT HAZARD INSURANCE NOTIFICATION" ON DISCLOSURE NOTICES FORM PROVIDED.

**PROPERTY INSURANCE:** [✓] Property hazard insurance in the amount of $ ___ with a mortgagee clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance [ ] is [X] is not available through the lender at an estimated cost of ___** for a 1 (one) year term.
**COST OF .2% TO 2.50% OF THE MORTGAGE AMOUNT. PREMIUM AMOUNTS AND AVAILABILITY VARY BASED UPON INSURANCE UNDERWRITING FACTORS. ***THE LESSER OF THE LOAN AMOUNT OR REPLACEMENT VALUE.

**LATE CHARGE:** If your payment is more than 15 days late, you will be charged a late charge of 5.000% of the overdue payment.
**OVERDUE PRINCIPAL & INTEREST PAYMENT

**PREPAYMENT PENALTY:** If you pay off early, you [ ] May [✓] Will not have to pay a penalty.
[✓] May [ ] Will not be entitled to a refund of part of the Finance Charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure along with copies of documents referred to in this disclosure.

_____    10.21.05            _____    10.21.05
VIKTOR KOTOK              Borrower/Date        NADEZHDA KOTOK           Borrower/Date

                          Borrower/Date         EXHIBIT A                Borrower/Date

Modified - 788(0310) 10/03
MCTX 768-1 (05040b)
Page 1 of 2